## GUMBIN et al. v. ALEXANDER et al.

Circuit Court of Appeals, Seventh Circuit.
December 14, 1927.

No. 3901.

1. **Vendor and purchaser** ⊂⊃16(1)—Letter from owner to real estate broker held not an "offer" to sell, but real estate broker's employment contract.

Letter from landowner to real estate broker, in terms agreeing to sell the property for a certain amount, all cash, and to pay broker a real estate commission of a certain amount, and providing that broker is to have first right to conclude the purchase, provided he makes bona fide offer, with check accompanying same, within certain time, *held* not an "offer" to sell, capable of being converted into a contract of sale by an acceptance, but merely a real estate broker's employment contract.

2. **Vendor and purchaser** ⊂⊃16(1)—Third person cannot accept offer to sell.

Generally speaking, an offer to sell cannot be accepted by another than the one to whom made.

3. **Vendor and purchaser** ⊂⊃16(1)—Acceptance of offer to sell, accompanied by check for less than price, held insufficient, if refused.

Acceptance of an offer to sell for $4,000,000 cash, which was to be accompanied by check, to constitute a binding contract, one of the obligations of which was a broker's commission of $100,000 to be paid by owner, must be accompanied by a check satisfactory to the owner, so that he is within his rights in refusing to accept check for $25,000.

Appeal from the District Court of the United States for the Eastern Division of the Northern District of Illinois.

Suit by Harry J. Gumbin and another, executors of Oscar Gumbinsky, deceased, against Alexander J. A. Alexander and others. From decree for defendants, plaintiffs appeal. Affirmed.

Edward C. Higgins, of Chicago, Ill., for appellants.

Edwin C. Austin, of Chicago, Ill., for appellees.

Before ALSCHULER, EVANS, and PAGE, Circuit Judges.

EVAN A. EVANS, Circuit Judge. This suit was brought to secure the specific performance of a contract, alleged to have been made, whereby the appellees sold the property known as the Ashland Block in the city of Chicago, for the agreed price of $4,000,-000. The bill of complaint contains a full and complete statement of the negotiations of the parties which resulted in the alleged contract. Appellees challenge the sufficiency of the allegations to support the relief, and their contentions were sustained by the District Court. From a decree entered in their favor, this appeal is taken.

The bill recites that appellees were the owners of the property known as the Ashland Block; that the first-named appellee was duly authorized and empowered, by his co-owners, to negotiate for the sale of and to sell the premises. Negotiations for the sale of the property began by a letter which Gumbinsky wrote to a real estate broker as follows:

"Lee J. Lesser, First National Bank Bldg., Chicago—Dear sir: You are hereby authorized to buy for my account the Ashland Block and the Union Hotel, including theater and all buildings and lands, all located at Clark and Randolph streets, Chicago, for $3,450,-000, all cash and subject to immediate acceptance.

"Herewith hand you check to the order of Dr. A. J. A. Alexander for $25,000, to apply on above pending definitive contract.
          "Oscar Gumbinsky."

The real estate broker then arranged a meeting between Alexander and himself, at which time he submitted Gumbinsky's offer. It was rejected. On this same day, however, Alexander signed the following statement or proposal:

"Lee J. Lesser, Chicago, Ill.: I hereby agree to sell the Ashland Block property, including the Union Hotel and Olympic Theater (land and buildings), for $4,000,000, all cash, and will pay you a real estate commission of $100,000.

"You are to have first right to conclude the purchase, provided you make bona fide offer, with check accompanying same, not later than December 8, 1924.
          "A. J. A. Alexander."

Gumbinsky thereupon attempted to accept what appellants here call the offer. He wrote:

"In accord with letter dated December 1, 1924, to Lee J. Lesser, I hereby agree to purchase the Ashland Block property, which includes the Ashland Block building and land, the Union Hotel building and land, Olympic Theater building and land, all located in Chicago, at northeast corner of Clark and Randolph streets, 160 feet on Randolph street by app—180 feet on Clark street, for $4,000,000, all cash, with the understanding that the 99-year lease with Ashland Block Ass'n is to be canceled. With this proposition I herewith attach a check for $25,000, showing good faith. Instruct your attorneys to draw contracts."

At the same time Gumbinsky delivered to the broker his check for $25,000 in the language following:

"Pay to the order of Alexander J. A. Alexander $25,000, twenty-five thousand and no/100 dollars. To Chicago Trust Company Member Federal Reserve System Chicago, Illinois, 2–32 Gumbinsky Bros. Co. per Oscar Gumbinsky, p."

The real estate broker tendered to first-named appellee Gumbinsky's offer and his check. They were refused.

[1] The determination of this appeal turns upon the existence of a valid contract to sell. Was Alexander's communication to Lesser, dated December 1st, an offer to sell? Was Gumbinsky's letter of December 6th to Alexander a valid acceptance of Alexander's offer? Answering either question in the negative necessitates affirmance.

We think both questions must be answered in the negative. Respecting the so-called offer, it is significant:

(a) That Alexander addressed this communication to Lesser, the real estate broker.

(b) By the first paragraph he fixed the selling price at $4,000,000 and the real estate broker's commission at $100,000.

(c) By the second paragraph he more specifically prescribed the broker's duties and specified the conditions under which a commission would be earned. He referred therein to a *"bona fide offer"* and to *"a check accompanying same."*

An offer from whom? Obviously from a prospective purchaser produced by the real estate broker. *Bona fide offer;* who was to determine whether the offer was acceptable or bona fide? Obviously Alexander. What was meant by the reference to "check accompanying same"? Did "bona fide" also modify "check"? Unless the purchaser was willing to pay $4,000,000 in cash for the property, it is obvious that Alexander, and Alexander alone, was to determine whether the offer

was satisfactory, and whether the check was sufficient to satisfy him that the purchaser would go through with the deal.

The use of the word "offer" in the second paragraph is persuasive. For an offer which is capable of being converted into a contract of sale by an acceptance must be made under circumstances which evidence an intention that its acceptance shall constitute a binding contract. If the proposal is intended merely to open negotiations and to solicit tenders, it is not an offer, the acceptance of which will impose upon the offerer the obligations of a binding contract. Williston on Contracts, vol. 1, p. 532; Hartenbower v. Uden, 242 Ill. 434, 90 N. E. 298, 28 L. R. A. (N. S.) 738; Kelly v. Fischer, 263 Ill. 184, 105 N. E. 21; Fletcher v. Underwood, 240 Ill. 554, 88 N. E. 1030. We conclude, therefore, that the so-called offer was but the real estate broker's employment contract.

[2, 3] 2. Gumbinsky's letter did not constitute an acceptance of Alexander's offer. Respecting this letter, it is significant:

(a) That it is signed by a party other than the one to whom the so-called offer is addressed.

(b) It called for a cancellation of a 99-year lease, a provision not found in the offer.

(c) It was accompanied by a check for $25,000.

(d) The check was not signed by Gumbinsky.

Assuming the Alexander proposal was an offer, it was not made to Gumbinsky. Generally speaking, an offer by A. to B. cannot be accepted by D. Each person has a right to select and determine the party with whom he will contract. He cannot have some third person thrust on him without his consent. 23 R. C. L. 1276. But, were appellants to overcome the heretofore mentioned objections to a binding contract, we are unable to find any support for a holding that would make appellees accept an uncertified check from an unknown maker for $25,000 to bind a contract one obligation of which was a broker's commission of $100,000.

The conclusion is unavoidable that, if the offer could be accepted by a third party it should have been accompanied by $4,000,000 in cash or if a check for a sum less than the full amount was tendered, Alexander was the sole judge of the reasonableness of its size. Even if his decision was in part controlled by the words "bona fide" in his so-called offer, still he was strictly within his rights in refusing to accept the tendered check for $25,000, on a $4,000,000 deal, wherein he obligated himself to pay a broker's commission of $100,000.

The decree is affirmed.